IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DARNELL GRIFFIN, #A0127073, | ) | CIV. NO. 10-00420 BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING MOTION TO |
| vs. | ) | DISMISS FIRST AMENDED |
| | ) | COMPLAINT |
| NOLAN ESPINDA, GARY | ) | |
| KAPLAN, DR. SISAR PADERES, | ) | |
| JANE AND JOHN DOE 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff brings this action against Defendants Nolan Espinda, Gary

Kaplan, and Sisar Paderes, M.D., ("Defendants"), employees of the Halawa

Correctional Facility ("HCF"), pursuant to 42 U.S.C. § 1983. Plaintiff alleges that

Defendants violated his constitutional rights when they knowingly failed to protect

him from assault by another inmate and failed to provide him with adequate

medical care after the assault.

Before the court is Defendants' Motion to Dismiss First Amended

Complaint ("Motion"), for Plaintiff's failure to exhaust administrative remedies.

Doc. #50. Plaintiff has filed an Opposition, Doc. #90, and Defendants have filed a

Reply. Doc. #91. Based on the following, the court GRANTS Defendants'

Motion to Dismiss.[1]

## I. **LEGAL STANDARD**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),

"[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211

(2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002) (*per*

*curiam*). The exhaustion requirement applies to all prisoner suits relating to prison

life, regardless of the relief sought by the prisoner and regardless of the relief

offered through administrative procedures. *Porter v. Nussle*, 534 U.S. 516, 524,

532 (2002) ("Even when the prisoner seeks relief not available in grievance

proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citing

*Booth v. Churner*, 532 U.S. 731, 734, 741 (2001).

Section 1997e(a) does not impose a pleading requirement, but rather

provides an affirmative defense under which defendants have the burden of raising

---

[1] This matter is suitable for disposition without a hearing pursuant to the Local Rules of
Practice for the United States District Court for the District of Hawaii, LR 7.2(d).

and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust prison administrative remedies is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. *Wyatt*, 315 F.3d at 1119 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1998) (per curiam)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20.

## II. DISCUSSION

Plaintiff alleges that Defendants Espinda and Kaplan inappropriately approved his transfer to administrative segregation from the general population, despite their knowledge that he was a security risk and based on his "highly publisized [sic] case." Doc. #11, First Amended Complaint ("FAC") at 6-7.[2] Plaintiff claims that he was thereafter assaulted by gang members in the HCF administrative segregation unit on July 9, 2009. Plaintiff further alleges that Defendant Dr. Paderes failed to provide him with adequate and timely medical care, as prescribed by another doctor at the Pali Momi Medical Center, after the

---

[2] For clarity, the court refers to the electronic pagination for all documents, as seen in the docket report in this action.

alleged assault. FAC at 8. Plaintiff commenced this action on July 22, 2010.

Defendants argue that Plaintiff failed to properly exhaust his prison administrative remedies in compliance with the Hawaii Department of Public Safety's ("DPS") regulations governing inmate grievances, by failing to timely or properly grieve his claims before he filed suit. Doc. # 50-1 at 5-8.

## A. Hawaii's Administrative Exhaustion Procedure

The PLRA requires "proper" exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. This is so "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Requiring prisoners to properly exhaust their claims furthers the PLRA's goal of efficiency by "'reduc[ing] the quantity and improv[ing] the quality of prisoner suits.'" *Id.* at 94 (*quoting Porter*, 534 U.S. at 524). Requiring proper exhaustion advances this goal by: (1) "giv[ing] prisoners an effective incentive to make full use of the prison grievance process;" (2) reducing prisoner suits, as some prisoners are "persuaded by the proceedings not to file an action in federal court;" and (3) improving the quality of any remaining prisoner suits "because proper exhaustion often results in the creation of an administrative record that is helpful to the court."

*Ngo*, 548 U.S. at 94-95.

Hawaii's prison system's requirements, as set forth in the DPS Policies and Procedures Manual ("PPM") (1992) § 493.12.03(4.0), "define the boundaries of proper exhaustion." *See Jones,* 549 U.S. at 218; *see also* Doc. #50-3, Defs.' Ex. A. The rules establish a three-step process for exhausting an administrative appeal--the inmate must submit a grievance at each step and wait either for a response to that grievance or for the time to expire for receiving a response before moving on to the next step. *See* PPM § 493.12.03.13–15.

At Step 1, the inmate must submit a grievance to a Unit or Section Manager within fourteen days of the date on which the complained-of action occurred. *See* PPM § 493.12.03.13(i). The Unit or Section Manager has fifteen working days from the date of receipt of the grievance during which to investigate and respond. PPM § 493.12.03.14(h). If the inmate receives an adverse determination at Step 1, the inmate has up to five days to file a Step 2 appeal from the Unit Manager's decision with the Facility Administrator. PPM § 493.12.03.14(k) and § 493.12.03.15(a).

The Facility Administrator then has fifteen working days from the date of receipt of the Step 2 appeal to submit a written response to the inmate. PPM § 493.12.03.15(e). If the inmate again receives an adverse determination, the

inmate has up to five days to file a Step 3 appeal with the Division Administrator.

PPM § 493.12.03.15(f). The Division Administrator has twenty working days

from the date of receipt of the inmate's Step 3 appeal within which to submit a

written response to the inmate. PPM § 493.12.03.15(g)(6). The Division

Administrator's decision is final. PPM § 493.12.03.16.

If an inmate refuses to sign for receipt of a grievance response, the

grievance is considered concluded per PPM § 493.12.03.4.14(j)(4). Further, if the

facility fails to respond to an inmate's initial grievance or appeal within the time

allowed, the inmate may proceed to the next step in the grievance process, unless

the inmate agrees in writing to a extension of time for response. *See*

§ 493.12.03.14(i, l). To satisfy section 1997e(a), prisoners are required to use this

process to exhaust their claims prior to filing suit. *Ngo*, 548 U.S. at 85-86;

*McKinney*, 311 F.3d at 1199-1201.

B.   **Analysis**

On June 16, 2010, almost a year after the alleged assault occurred,

Plaintiff submitted three step-1 grievances concerning the allegations in the FAC.

*See* Docs. #50-4- #50-11. Each of these grievances was rejected as untimely.

Plaintiff does not dispute that he failed to comply with the DPS's administrative

grievance policies and procedures, but argues that (1) the PPM explicitly states that

inmates are not required to administratively grieve their claims before filing suit,

thus, Defendants waived and are estopped from relying on the defense of failure to

exhaust; (2) he was unable to exhaust during the 21-25 days that he was

hospitalized following the assault; and (3) Defendants' Motion is untimely.

## A.    PPM § 493.12.03.20(a)

Section 493.12.03.20 states in full:

.20    Referral to Agencies or Officials other than Departmental

a.  An inmate should, but is not strictly required to first exhaust
the administrative process set forth in this policy for the
resolution of complaint/grievance before seeking aid from the
Ombudsman or other agencies or filing suits in court.

b.  <u>Inmates are advised that courts frequently require evidence
that administrative remedies have been exhausted before
accepting jurisdiction over a complaint/grievance</u>.

(emphasis added).   Plaintiff argues that he relied on this language as assurance that

he need not exhaust his claims prior to filing suit in federal court.  Plaintiff is

mistaken, both in the legal and factual conclusions he draws.  First, a cursory

reading of this passage makes clear that inmates are under notice that they *should*

exhaust their administrative grievances before they resort to other agencies or to

court action, and that many courts will *require* administrative exhaustion of all

claims before suit may be initiated.  Rather than dissuade inmates from fully-

exhausting their claims, the PPM notifies them that the best course of action is to

exhaust their claims with the prison before resorting to self-help with other agencies or courts.

Second, while state courts or agencies may not require exhaustion, this language specifically warns that some courts, i.e., the federal court, will require such exhaustion. *See* 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 211. The Supreme Court has ruled that § 1997(e) (a) "eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy, and effective' before exhaustion could be required." *Booth*, 532 U.S. at 739. The Court stressed that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Id.* at 741 n.6. It also expressed concern about bypassing administrative remedies. *Ngo*, 548 U.S. at 96. Nothing in the PPM contradicts this requirement.

Third, Plaintiff is not entitled to equitable estoppel based on the PPM's language. It is settled that exhaustion can be excused under the PLRA due to a mistake or misconduct by prison officials that prevented an inmate from complying with appeal procedures, through no fault of the inmate's and when the inmate took reasonable and appropriate steps to secure administrative relief. *Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010). The Ninth Circuit Court of

Appeals has not, however, addressed whether equitable estoppel can foreclose the

defense of non-exhaustion under the PLRA, although it has assumed it can do so in

a non-PLRA context. *See Moyle v. Golden Eagle Ins. Corp.*, 239 Fed. Appx. 362,

364 (9th Cir. 2007) (concluding that the facts did not support estoppel). The

Second and Fifth Circuits have held that "the affirmative defense of exhaustion is

subject to estoppel" under the PLRA. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d

Cir. 2004); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998).[3] Assuming

without deciding that it applies in this circuit, a finding of equitable estoppel rests

on:

> (1) the plaintiff's actual and reasonable reliance on the defendant's
> conduct or representations, (2) evidence of improper purpose on the
> part of the defendant, or of the defendant's actual or constructive
> knowledge of the deceptive nature of its conduct, and (3) the extent to
> which the purposes of the limitations period have been satisfied.

*Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000). Usually, these

requirements are considered in the context of the federal government, but they

have been applied to states as well. *Hanley v. Donovan*, 734 F.2d 473, 476 (9th

Cir. 1984) (suit against the California Employment Development Department).

"Equitable estoppel . . . focuses primarily on actions taken by the defendant to

---

[3] The Third, Seventh, and Tenth Circuits have explicitly refrained from deciding the issue. *See Hill v. Smith*, 186 Fed. Appx. 271, 274 (3d Cir. 2006); *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006); *Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002).

prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).

Plaintiff does not show that the DPS engaged in affirmative misconduct by setting forth language in the PPM informing inmates that, while full exhaustion may not be required by the prison, it is recommended and is required in certain courts. This statement is neither incorrect nor erroneous. The PPM's statement does not rise to the level of affirmative misconduct, therefore it does not estopp Defendants from raising the defense of non-exhaustion of administrative remedies. Plaintiff's mistaken interpretation of the information in the PPM does not excuse his failure to exhaust his administrative remedies before commencing this suit.

## B.    Equitable Tolling

"'Equitable tolling' focuses on 'whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (quoting *Johnson*, 314 F.3d at 414).

Plaintiff argues that he was unable to pursue his administrative

remedies while he was hospitalized for 21-25 days following the assault.

First, the PPM specifically provides for such tolling, stating:

> 1. The complaint/grievance must be filed within fourteen (14) days from the date on which the basis of the alleged complaint occurred unless it is not reasonably feasible to file within such a period and the justification for the late filing is stated in the complaint/grievance.

PPM § 493.12.03.13(i). Plaintiff admits that he read the PPM, although he claims

that he relied on § 493.12.03.20 to his detriment. Plaintiff fails, however, to

explain why he chose to rely on one section of the PPM yet ignore another section.

Nor does he explain why he was unable to pursue his administrative remedies *after*

he was released from the hospital, in August 2009. Plaintiff did nothing to pursue

exhaustion until June 16, 2010, three months after he was transferred from HCF to

Arizona and nearly a year after the alleged assault occurred.

Second, in his three, June 16, 2010, step 1 grievances, Plaintiff

provided no explanation or justification to prison authorities for his delayed filing

as required. Four months *after* he filed suit and after his three grievances were

denied as untimely, Plaintiff inquired whether he would be allowed to pursue the

grievance process for his claims, asserting his hospitalization after the incident as

the reason for his late filing. *See* Doc. #90-2, Pl. Opp'n. This was too late and

suggests an ill-fated attempt to create a retroactive record of his attempts to exhaust

simply to satisfy the PLRA. Moreover, Plaintiff's signed receipts of the denial of

his grievances states that he intended to pursue immediate legal relief. Plaintiff signed his Complaint twelve days later, on June 28, 2010, and it is postmarked July 19, 2010. *See Houston v. Lack*, 487 U.S. 266 (1988) (setting forth the prison mailbox rule); *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying rule to filing of prisoner civil rights actions). This timeline strongly suggests that Plaintiff understood that he was untimely and that he filed these grievances in anticipation of suit and solely to comply with the PLRA's grievance requirement.

## C.     Timeliness of Defendants' Motion

Plaintiff argues that Defendants' Motion is untimely. He asserts again that the court did not have discretion to amend the Rule 16 scheduling order in this case to allow Defendants to file the Motion. The court has addressed and rejected this argument and will not consider it again. *See* Doc. #68. The court further notes that Plaintiff has requested and been granted extensions of time and amendments to the Rule 16 scheduling order numerous times. *See e.g.,* Docs. #61, #63, #69, #83, #86, #89. The alleged untimeliness of Defendants' Motion does not excuse Plaintiff's failure to exhaust his claims.

## III.  CONCLUSION

One of the purposes of exhaustion is to give prison officials a chance to remedy justified inmate grievances without court action. This purpose cannot be

fulfilled if a prisoner is allowed to file suit before he fully exhausts his claims.

When a prisoner does "not exhaust his administrative remedies prior to sending his

complaint to the district court, the district court must dismiss his suit without

prejudice." *Vaden v. Summerhill*, 449 F.3d 1047 1051 (9th Cir. 2006). Plaintiff

failed to timely or properly exhaust prison administrative remedies before

commencing this suit. Defendants' Motion to Dismiss the First Amended

Complaint is GRANTED. Plaintiff's Complaint and action are DISMISSED

without prejudice. Plaintiff is notified that this dismissal may count as a strike

pursuant to 42 U.S.C. 1997e(a). The Clerk of Court is directed to enter judgment

and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 7, 2011.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

*Griffin v. Espinda, et al.* CV10-00420 BMK, Order Granting Motion to Dismiss First Amended Complaint/ PSAs ords/dmp/2011/Griffin 10-420 BMK (GRT mdsm exh)